Erin Rose Ronstadt, SBN 028362
Clayton Richards, SBN 029054
RONSTADT LAW, PLLC
PO Box 34145
Phoenix, AZ 85067
(602) 615-0050
(602) 761-4443 Fax
erin@ronstadtlaw.com
clayton@ronstadtlaw.com
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MaryAnn Kent, a married woman;<br><br>Plaintiff,<br><br>v.<br><br>Hartford Life and Accident Insurance Company;<br><br>Defendant. | No.<br><br>**COMPLAINT** |

For her claims against Hartford Life and Accident Insurance Company ("Hartford" or "Defendant"), Plaintiff MaryAnn Kent ("Ms. Kent" or "Plaintiff") alleges as follows:

## JURISDICTION, PARTIES, AND VENUE

1. This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").

2. Vantage West Credit Union's Flex 125 Plan (the "Plan") is an ERISA benefit plan established and maintained by VWCU.

3. Vantage West Credit Union ("VWCU" or "Plan Administrator") established the Plan for the benefit of its employees.

4. VWCU is the Plan Sponsor and Plan Administrator for the Plan, a Plan fiduciary, and employer.

5. Hartford fully insured and administered benefits under the Plan.

6. Hartford is a fiduciary of the Plan as defined by ERISA.

7. Ms. Kent was a participant and beneficiary of the Plan as an employee of VWCU

8. This is an action by Ms. Kent to recover long-term disability ("LTD") and life insurance waiver of premium ("LWOP") benefits under insurance policies issued by Hartford to insure the Plan.

9. Under the Plan, Hartford fully insured employees of VWCU for LTD benefits pursuant to Policy Number GLT-043526 ("the LTD Policy").

10. Under the Plan, Hartford fully insured employees of VWCU for LWOP benefits pursuant to Policy Number GL-043526 ("the LWOP Policy").

11. At the time Ms. Kent sought LTD and LWOP benefits under the Plan, Hartford administered claims for these benefits for VWCU under the Plan, acted on behalf of the Plan, and acted as an agent of VWCU and the Plan to make decisions regarding the payment or award of these benefits for the Plan and to administer the Plan.

12. Ms. Kent is a citizen and resident of Pima County, Arizona.

13. VWCU has its principal place of business in Pima County, Arizona.

14. Hartford has its principal place of business in the State of Connecticut.

15. Hartford is licensed and authorized to do business in Pima County, Arizona, and resides and is found within Pima County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

16. Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

17. This Court has jurisdiction over the claims subject to ERISA under 28 U.S.C. §§ 1132(a) and 1132(e)(1).

**GENERAL ALLEGATIONS**

18. Ms. Kent began working for VWCU on March 9, 1998.

19. Ms. Kent worked as a Bank Teller for VWCU.

20. Ms. Kent's last date of work with VWCU was on April 18, 2002.

21. Ms. Kent ceased working secondary to her Disability as defined in the LTD and LWOP Policies and the Plan.

22. Ms. Kent suffers from several debilitating medical conditions including a history of viral cardiomyopathy with congestive heart failure, pulmonary hypertension, anoxic brain injury, cryptogenic autoimmune hepatitis, cirrhosis of the liver, lumbar spine degenerative disc disease with radiculopathy at the L3-4 and L4-5 levels, severe right shoulder osteoarthritis, fibromyalgia, Sicca Syndrome, anemia, fatigue, chronic gastrointestinal issues, tremors, syncope, restrictive lung disease, obstructive sleep apnea, asthma, and allergic rhinitis, among other impairments.

23. Collectively, Ms. Kent's conditions are Disabling and prevent her from performing Any Occupation for which she is qualified by education, training, or experience under the LTD and LWOP Policies and the Plan.

24. Ms. Kent became Disabled while insured under the Plan.

25. To be eligible for LTD benefits, Ms. Kent must meet the definition of Total Disability as it is defined in the LTD Policy and Plan. Under the LTD Policy, Ms. Kent is considered Totally Disabled if, during the Elimination Period and the next twenty-four (24) months, she is prevented by accidental bodily injury, sickness, Mental Illness, substance Abuse, or pregnancy, from performing the Essential Duties of her occupation, and as a result she is earning less than 20% of her Pre-Disability Earnings. After that, she "must be so prevented from performing the Essential Duties of Any Occupation for which [she is] qualified by education, training, or experience."

26. Any Occupation is defined as "an occupation for which [Ms. Kent is] qualified by education, training or experience" and "that has an earnings potential greater than an amount equal to the product of [Ms. Kent's] Indexed Pre-disability Earnings and the Benefit Percentage."

27. Essential Duties are defined as "substantial, not incidental"; "fundamental or inherent to the occupation"; and "cannot be reasonably omitted or changed." To be at work for the number of hours in Ms. Kent's regularly scheduled workweek is also an Essential Duty.

28. Under the LWOP Policy, Ms. Kent must meet the definition of Disability to qualify for a waiver of her life insurance premiums for her life insurance policy worth $47,000.

29. Under the LWOP Policy, as defined by Hartford, Disability is "hav[ing] a condition that prevents [Ms. Kent] from doing any work for which [she is] or could become qualified by education, training or experience and it is expected that this condition will last for at least nine consecutive months from [Mr. Kent's] last day of work as an Active Full-Time or Part-Time Employee."

### Claims History

30. Under the LTD Policy, Hartford found Ms. Kent Disabled from her Own Occupation from July 17, 2002 through July 17, 2004. Thereafter, Hartford found Ms. Kent Disabled from Any Occupation from July 18, 2004 through January 30, 2019.

31. Under the LWOP Policy, Hartford found Ms. Kent Disabled from January 19, 2003 through February 4, 2019.

32. In reaching its various determinations of Disability under the LTD and LWOP Policies, Hartford conducted several medical and vocational reviews supporting Ms. Kent's ongoing Disability.

33. Due to Hartford's deficient disclosures of relevant documents, Ms. Kent does not have several of the medical and vocational file reviews conducted by Hartford. It stands to reason, however, that these missing reports support Ms. Kent's Disability under the Plan, as Hartford repeatedly approved Ms. Kent's LTD and LWOP claims for almost 17 years.

34. On September 14, 2004, Nurse Case Manager ("NCM") Karen Whitmore concluded, "Anoxic brain syndrome in this case is irreversible. This is organic due to [Ms. Kent's] loss of consciousness (blacking out). It would not be expected that [Ms. Kent] would have any type of critical thinking skills to be able to perform any type of work functions. Fatigue would be a big issue that would not allow [Ms. Kent] to be able to reliably function in a full time status position. Medical records support the above. MCCM [*sic*] would suggest that [claims examiner] [follow up] with [Ms. Kent] every 6 months to

-4-

yearly. [Ms. Kent's] condition is not expected to change. There would be no benefit for [behavioral health claims manager] to review file, as [Ms. Kent's] psychological issues are caused by her organic brain disorder which is physical in nature."

35. On September 20, 2004, Hartford Claims Examiner, Jill Underhill, approved Ms. Kent's LTD claim through the "test change" into the Any Occupation phase of Disability.

36. On August 25, 2005, Hartford Claims Examiner, Ryan Shiek, concluded, "[Ms. Kent is] likely to remain [Totally Disabled] due to nature of conditions, [return to work] unlikely given conditions."

37. On September 28, 2006, Hartford Claims Examiner, Eric Hanna, concluded, "[Ms. Kent] remains [Totally Disabled] due to [restrictions and limitations] related to tremors and other [diagnoses]."

38. On October 17, 2007, Hartford Claims Examiner, Molly Grossman, concluded, "[Ms. Kent] has a limited education and transferable skills, as well as not showing any improvement. [She] remains unable to [return to work] at any occ[upation]."

39. In an August 4, 2008 internal note, Hartford NCM, Carol Pearson, noted she "[r]eceived addendum from Dr. Foote saying that the tremor impacts both [Ms. Kent's] upper extremities and limits fine motor coordination. Examples of how this potentially impacts [Ms. Kent's] ability to perform her prior occupation are listed. . . .While addendum describes deficits applicable to prior occupation, the examples given support loss of fine motor control to a degree that would impair accuracy of fine motor activity in any occupation."

40. On October 21, 2008, Hartford Claims Manager, Dawn Picard, concluded, "[The] [w]eight of the medical documentation on file at this time continues to support that [Ms. Kent] remains limited due to tremor of both upper extremities that impairs ability for fingering, handling and feeling and from frequent use of upper extremities."

41. As part of its file review, Hartford conducted video surveillance and an in-person interview, which it completed on September 3, 2010. Hartford determined that it was

"unable to identify any evidence warranting further investigation" and continued Ms. Kent's LTD and LWOP benefits.

42. On June 20, 2012, Hartford Claims Examiner, Brenda Brinson, concluded, "[Ms. Kent] continues [with] cognitive impairment and limited [restrictions and limitations] supporting continued [Total Disability]."

43. On November 13, 2013, Hartford Claims Examiner, Deborah Griffin, noted, "[Ms. Kent] with multiple medical diagnoses and cognitive impairment which would prevent any gainful work and continue to meet definition of disability."

44. On April 1, 2015, Hartford Claims Examiner, Christiannejo Anolin, concluded, "[B]ased on medical records it is unreasonable to expect [Ms. Kent] to return to [full-time] gainful employment."

45. On July 29, 2016, Claims Examiner, Yazmin Yupangco, concluded, "[Ms. Kent] continues to satisfy the definition of disability."

46. On September 11, 2017, Ms. Yupangco concluded that "[b]ased on updated forms received[,] [Ms. Kent] appears to continue to meet Policy definition of Disability at this time."

### Termination of LTD and LWOP Benefits

47. Despite having ample evidence in support of Ms. Kent's ongoing, permanent Disability, on or around January 9, 2018 Claims Management Examiners Frank Martinko and Marvin Buada transferred Ms. Kent's claim from "CAR 3 to CAR 1."

48. The changing of "CAR" levels, or "continuing ability review" levels, initiated a systematic creation of adverse evidence in an otherwise valid Disability claim for the purpose of supporting termination of Ms. Kent's LTD and LWOP benefits.

49. On information and belief, Hartford's transfer of Ms. Kent's claim from CAR 3 to CAR 1 represented the beginning of a proactive effort to generate unfavorable evidence which Hartford could use to justify a termination of benefits.

50. In a letter dated February 1, 2019, Hartford terminated Ms. Kent's LTD claim (the "the LTD Denial").

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Ste. B, Phoenix, AZ 850124
(602) 615-0050

51. In a letter dated February 4, 2019 Hartford terminated Ms. Kent's LWOP benefits ("the LWOP Denial") (collectively "the Denials").

52. In the Denials, Hartford purportedly relied upon a paper file review conducted by Dr. Darryl Lesoski dated November 9, 2018; an Employability Analysis completed by a Hartford Vocational Rehabilitation Case Manager on November 15, 2018; and a neuropsychological evaluation performed by Dr. John Tsanadis on December 29, 2018.

53. In the Denials, Hartford failed to properly consider all of the medical evidence, the opinions of Ms. Kent's treating providers, the prior opinions of Hartford's own reviewers and consultants, and Ms. Kent's credible reported symptomology, which is substantiated in the objective record.

54. Despite several requests over the course of months, Hartford failed to provide Ms. Kent's representative with critical documentation, including the reports of Drs. Lesoski and Tsanadis, until May 2020.

55. Hartford's egregious delay in disclosing these documents—including reports upon which the Denials are based—violated ERISA, and all but eliminated the possibility for Ms. Kent to meaningfully appeal Hartford's termination of benefits.

56. In the Denials, Hartford failed to adequately explain why it credited its paper file reviews over Ms. Kent's treating providers, who have repeatedly endorsed and supported her claims for benefits.

57. Ms. Kent's treating providers are uniquely situated to evaluate her restrictions and limitations based on their expertise, longstanding treatment, and many examinations of her, but Hartford chose to rely upon the opinions of a physician who administered a one-off examination and a physician who merely reviewed medical records.

58. Hartford had no reasonable basis to ignore Ms. Kent's treating provider assessments.

59. Hartford conducted an inadequate and biased review of Ms. Kent's LTD and LWOP claims.

-7-

60. In the Denials, Hartford failed to adequately explain the difference in policies or procedures reconciling the Social Security Administration's ("SSA") finding of disability with Hartford's finding of non-disability.

61. Hartford's Denials did not give a full and proper acknowledgment of the SSA determination; only the LTD Denial included a boilerplate acknowledgement.

62. While Hartford noted differences between the two programs' definitions of disability, those differences should not have led to different outcomes in Ms. Kent's case.

63. Hartford failed to show what changed in Ms. Kent's medical condition to justify a termination of her LTD and LWOP benefits.

### Hartford's Failure to Provide All Relevant Information

64. On February 20, 2019, prior to obtaining legal representation, Ms. Kent requested all relevant information from Hartford.

65. On or around March 12, 2019, Hartford disclosed a deficient file that was missing relevant documents and had numerous unreadable pages.

66. Hartford's March 12, 2019 relevant document disclosure contained numerous documents with formatting errors consisting of seemingly random letters, numbers, and characters, making it impossible to ascertain the documents' true contents.

67. The formatting errors corrupted many documents in the file, including claim correspondence, medical records, and internal notes.

68. While some documents were readable, the aforementioned formatting errors permeated the file, making many documents partially or completely unreadable, and necessitating another complete disclosure of documents in order for Ms. Kent to have the opportunity to present a meaningful appeal.

69. On June 10, 2019, through counsel, Ms. Kent sent her second request to Hartford for all relevant documents under ERISA.

70. On July 2, 2019, Ms. Kent received an incomplete, 68-page disclosure sent under cover letter dated June 28, 2019 regarding her LWOP claim.

71. On July 15, 2019, Ms. Kent received another incomplete, 79-page disclosure sent under cover letter dated July 11, 2019 regarding her LTD claim. Of significance, Hartford sent this latter disclosure via CD, but failed to send the password to access the contents. Ms. Kent requested the password on August 1, 2019 and Hartford provided the password on August 6, 2019.

72. In the interim, Ms. Kent received a 1,255-page disclosure from Hartford on July 24, 2019, which remained grossly deficient. Most notably, the following information was not disclosed:

- The LWOP Policy that the Hartford relied upon to set forth claim procedures or govern the administrative process;
- The medical file review report by Dr. Darryl Lesoski (Occupational Medicine);
- The Neuropsychological Independent Medical Examination by Dr. John Tsanadis;
- The names and qualifications of the medical and vocational experts whose advice was obtained on behalf of the Plan without regard to whether their opinion was relied upon in making the benefit determination(s);
- All service contracts for third-party vendors or entities that consulted on Ms. Kent's claim or that Hartford communicated with regarding Ms. Kent's claim;
- Reply to Hartford's letter from Dr. Tuli on August 28, 2018;
- Reply to Hartford's letter from Dr. Friedman on August 30, 2018;
- Reply to Hartford's letter from Dr. Krasinski on October 11, 2018;
- Medical records from Sun Life Family Health Center covering February 28, 2018 through June 21, 2018;
- Medical records from Dr. Tuli covering August 24, 2012 through August 17, 2017;
- Recent Medical records from Dr. Puri;
- Medical records from Dr. Krasinski covering July 6, 2018 through August 23, 2018;
- Medical records from Dr. Friedman dated July 26, 2018;
- A statement regarding the date by which Ms. Kent must bring a civil action for her benefits (*See* 29 C.F.R. § 2560.503-1(g)(1)(iv) and (j)(4)(ii));

- A description of any additional material or information necessary for Ms. Kent to perfect the claim **and** an explanation of why such material or information is necessary (*See* 29 C.F.R. § 2560.503-1(g)(1)(iii)); and
- The raw video footage of the September 5, 2008, October 10, 2008, and October 11, 2018 surveillance attempts.

73. On September 24, 2019, Ms. Kent sent a third request for all relevant documents to Hartford.

74. Finally, on September 30, 2019, without a substantive response from Hartford, Ms. Kent timely filed her LTD and LWOP appeals (the "Appeals") with a request to supplement the appeals with additional evidence when/if Hartford made a proper disclosure of *all* relevant documents. With this letter, Ms. Kent also sent a fourth request for all relevant documents.

75. On October 10, 2019, Hartford acknowledged Ms. Kent's Appeals and granted an extension until December 30, 2019 to supplement the Appeals.

76. On October 14, 2019, Hartford disclosed the LWOP Policy for the first time to Ms. Kent.

77. On October 15, 2019, Hartford disclosed a fifth, deficient file, which again was missing the majority of the evidence relied upon in the February 1, 2019 LTD and February 4, 2019 LWOP Denials.

78. On November 15, 2019, Ms. Kent sent a fifth and final request for all relevant documents related to Ms. Kent's LTD and LWOP claims. In this letter, Ms. Kent asserted that Hartford "disclose the requested information as soon as possible, but no later than Friday, November 29, 2019, or [Ms. Kent] may file a lawsuit in accordance to 29 C.F.R. § 2560(l)(2)."

79. Under ERISA, Hartford is required to provide Ms. Kent with a copy of all relevant documents free of charge within 30 days from the date of receipt of the request. *See* 29 C.F.R. § 2560.503-1(i)(5).

80. Hartford clearly failed to do this.

**RONSTADT LAW, PLLC**
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Ste. B, Phoenix, AZ 850124
(602) 615-0050

81. Finally, under cover letter dated May 21, 2020, Hartford disclosed many of the missing documents to Ms. Kent's representative, stating, "We are in receipt of your request dated, November 19th, 2019 requesting a copy of your claim file. Enclosed is a copy of the claim file or information you requested."

82. Hartford's response came nearly eight months after Ms. Kent timely appealed her LTD and LWOP claims.

83. To date, Hartford has not made a determination of Ms. Kent's LTD and LWOP Appeals.

84. Because Hartford and the Plan have failed to establish and follow reasonable claims procedures, as described in detail above, and these failures have caused prejudice and harm to Ms. Kent, she has exhausted her administrative remedies and is entitled to file a lawsuit under section 502(a) of ERISA. *See* 29 C.F.R. § 2560.503-1(l)(1), (l)(2)(i).

85. Hartford's regulatory violations here were not de minimis violations, but clearly caused prejudice and harm to Ms. Kent.

86. Hartford acknowledged Ms. Kent's Appeals, granted an extension to supplement the Appeals with additional evidence, but then failed to disclose most of the essential documents outlined above until five months after the deadline to supplement those Appeals. This is not consistent with the requirements of a full and fair review as prescribed by federal regulations. 29 C.F.R. § 2560.503-1(h)(4).

87. Hartford cannot in any conceivable scenario justify—either by citing good cause or matters beyond its control—its failure to make any decision on Ms. Kent's Appeals or timely provide relevant documents in response to her representative's requests.

88. Nor can Hartford illustrate that these violations took place "in the context of an ongoing, good faith exchange of information between the plan and the claimant." 29 C.F.R. § 2560.503-1(l)(2)(ii).

89. Hartford did not correspond with Ms. Kent whatsoever from October 14, 2019 to May 21, 2020.

-11-

90. Hartford's disclosure of many critical materials in response to the Firm's requests did not occur until nearly five months after the deadline established by Hartford to supplement the Appeals.

91. Hartford's failure to timely provide relevant documents does not constitute a "good faith exchange of information."

92. Consistent with the Department of Labor's claims procedure regulation, the Plan itself permits the filing of a lawsuit to recover Plan benefits "if the Plan fails to strictly adhere to the internal claims and appeals requirements" prescribed by federal regulation. *See* 29 C.F.R. § 2560.503-1.

93. As a result of Hartford's flagrant procedural violations and failure to exercise whatever discretion it claims to have to determine eligibility for benefits and construe and interpret policy terms, Ms. Kent is entitled to de novo review of her claim.

94. Ms. Kent timely filed this lawsuit.

**COUNT I**
**(Recovery of LTD and LWOP Plan Benefits)**
**(Defendant Hartford)**

95. All other paragraphs are incorporated by reference.

96. The Plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.

97. The Plan includes LTD and LWOP coverage and a promise to provide these benefits pursuant to the Policies until Ms. Kent is no longer Disabled under the terms of the Plan.

98. Ms. Kent continues to be Disabled under the terms of the Plan.

99. Ms. Kent has claimed the benefits under the Plan to which she is entitled.

100. Ms. Kent reasonably expected that her medical conditions met the requirements of Disability as defined by the LTD and LWOP Policies, and that she would receive benefits under the Plan until the Maximum Benefit Period or until she was no longer Disabled.

101. Despite the coverage of Ms. Kent's Disability, Hartford improperly terminated her LTD and LWOP benefits in breach of the Plan and ERISA.

102. Hartford's collective conduct was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and clearly erroneous.

103. Even if VWCU properly delegated discretionary authority to Hartford, in light of Hartford's wholesale and flagrant procedural violations of ERISA, Ms. Kent's claim should be entitled to *de novo* review. *See Halo v. Yale Health Plan,* 819 F.3d 42, 60-61 (2d Cir. 2016) ("when denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result in that claim being reviewed *de novo* in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent and harmless.")

104. On information and belief, Hartford's several egregious regulatory violations constitutes a pattern and practice.

105. Instead of evaluating a participant's eligibility based on the applicable LTD and LWOP Policy language and medical evidence, Ms. Kent is informed and believes that Hartford makes claims decisions based on the claims resources and financial risk it faces on certain claims.

106. Hartford wrongfully denied Ms. Kent's LTD and LWOP benefits without providing a coherent explanation for its adverse benefit determinations, and in a way that conflicts with the plain language of the Policy, violating 29 U.S.C. §§ 1109, 1132.

107. Hartford did not properly consider all of the available evidence when terminating Ms. Kent's benefits.

108. Hartford misstated medical evidence for its own financial benefit, *e.g.,* it excessively relied on biased medical reviewers, consultants, and examiners.

109. Hartford improperly disregarded the SSA's findings in its own finding of Disability.

110. Hartford relied on findings that constitute "clearly erroneous findings of fact" to deny Ms. Kent's LTD and LWOP benefits.

111. On information and belief, Hartford tainted its medical file reviewers by giving the reviewers inaccurate information regarding Ms. Kent, while also failing to provide its reviewers with all of the relevant evidence.

112. On information and belief, Hartford provided its reviewers and vendors with internal notes and financial information about the claims, compromising their ability to make "independent" medical determinations and creating further bias in reviews.

113. Hartford routinely emphasizes information that favors a denial of benefits while deemphasizing other information that suggests a contrary conclusion.

114. Hartford unreasonably withheld relevant documents during the claim and poorly managed the file, which is evidenced, in part, by its repeated failure to provide all relevant documents.

115. Hartford's failure to timely produce all relevant documents deprived Ms. Kent of a full and fair review.

116. Hartford's failure to comply with ERISA's disclosure requirements and poor management of the file demonstrate its abuse of discretion and improper claims handling.

117. Hartford failed to appropriately consider the opinions of Ms. Kent's treating and examining physicians.

118. On information and belief, Hartford used in-house reviewers in evaluating Ms. Kent's claim, because it knew that the in-house reviewers' recommendations would be unfavorable for the continuation of Ms. Kent's benefits.

119. On information and belief, the peer reviewers arbitrarily reached their opinions based on insufficient evidence or investigation.

120. Hartford failed to explain why it credited the physician reviewers over Ms. Kent's treating physicians.

121. Hartford failed to fully explain why it disregarded or failed to duly consider the findings of the SSA.

122. Hartford engaged in other procedural irregularities, which it did to serve its own financial best interests.

123. On information and belief, Hartford engaged in claim discussions to decide the directions of appeals without having reviewed all of the medical evidence, demonstrating its predetermined path of terminating benefits.

124. Hartford intentionally gathered evidence to stack the deck in its favor and against Ms. Kent.

125. Hartford failed to conduct a full and fair review, in part, because it cherry-picked and ignored information from the medical evidence and Ms. Kent's treating providers to support a decision to deny her LTD benefits.

126. Hartford acted with malice and in bad faith against Ms. Kent by intentionally disregarding favorable evidence to substantiate Ms. Kent's disability to deny her LTD benefits.

127. Hartford's conduct was motivated by financial considerations and caused by its structural conflict of interest as both decision maker and payor of Ms. Kent's LTD benefits.

128. Hartford has failed to produce any evidence that it protected Ms. Kent from its conflict, and instead, intentionally withheld information that would have otherwise revealed the depth of its self-interested conduct.

129. Ms. Kent alleges, on information and belief, that Hartford has a parsimonious claims handling history.

130. Hartford failed to conduct a "meaningful dialogue" regarding Ms. Kent.

131. Under the *de novo* standard of review, to be entitled to benefits, Ms. Kent need only prove by a preponderance of the evidence that she is disabled.

132. Even under the abuse of discretion standard of review, Hartford abused its discretion, because its decision terminating Ms. Kent's LTD benefits was arbitrary and capricious and was caused or influenced by Hartford's, its reviewing physicians', and its vendors' financial conflicts of interest. These conflicts of interest precluded the full and fair review required by ERISA, 29 U.S.C. 1133(2) and 29 C.F.R. § 2560.503-1(g)(1) and (h)(2).

133. In an abuse of discretion case, Ms. Kent is entitled to discovery regarding the effects of the procedural irregularities and structural conflict of interest that infiltrated the

claims handling process, and also regarding the effects of Hartford's, its reviewing physicians', its employees', and its vendors' financial conflicts of interest, biases, and motivations on the decision terminating Ms. Kent's LTD claim.

134. Under the *de novo* standard of review, Ms. Kent is entitled to discovery regarding, among other things, the credibility of the Hartford's medical reviews and the Hartford's lack of partiality due to its financial conflicts of interest. *Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007) (under the de novo standard of review, new evidence may be admitted regarding, among other things: "the credibility of medical experts… [and] instances where the payor and the administrator are the same entity and the court is concerned about impartiality" (*quoting Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1026-27 (4th Cir. 1993)).

135. Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal law, Ms. Kent is entitled to recover all benefits due under the terms of the Plan, and to enforce her rights under the Plan.

136. Ms. Kent is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of her disability benefits. She is entitled to a restoration of the *status quo ante* before her LTD benefits were wrongfully terminated.

137. Pursuant to 29 U.S.C. § 1132(g), Ms. Kent is entitled to recover her attorneys' fees and costs incurred herein.

138. Ms. Kent is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid.

**WHEREFORE**, Ms. Kent prays for entry of judgment against Defendant as set forth in this Complaint, which includes:

    A. For all past-due LTD benefits;

    B. Reinstatement of LWOP benefits;

    C. Clarifying and determining Ms. Kent's rights to future benefits under the terms of the Plan;

D. For any other benefits Ms. Kent may be entitled to receive under the Plan due to her Disability;

E. For an award of Ms. Kent's attorneys' fees and costs incurred herein under 29 U.S.C. § 1132(g) and A.R.S. §§ 12-341.01 and 351;

F. For an award of prejudgment interest on benefits and damages at the highest legal rate until paid in full; and

G. For such further relief as the Court deems just and reasonable.

Dated this 23rd day of November 2020.

RONSTADT LAW, PLLC

By: *s/ Erin Rose Ronstadt*
Erin Rose Ronstadt
Clayton W. Richards
*Attorneys for Plaintiff*